**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **SOUTHERN ALLIANCE FOR CLEAN ENERGY,** | ) ) ) |  |
| **Plaintiff,** | ) ) |  |
| **v.** | ) ) | **Civil Action No. 10-1335 (RCL)** |
| **UNITED STATES DEPARTMENT OF ENERGY,** | ) ) ) |  |
| **Defendant.** | ) ) |  |

_____ )

## MEMORANDUM OPINION

### I.    INTRODUCTION

This case concerns whether the Department of Energy ("DOE") followed its statutory responsibilities in responding to a Freedom of Information Act request.  Before the Court are the following motions: plaintiff's Motion [11] for Partial Summary Judgment, defendant's Cross-Motion [12] for Partial Summary Judgment, defendant's Motion [29] for Summary Judgment, and plaintiff's Cross-Motion [33] for Summary Judgment.  Upon consideration of the motions, oppositions, replies, the entire record in this case, and the applicable law, the Court will deny in part and deny without prejudice in part plaintiff's Motion [11] for Partial Summary Judgment, grant in part and deny without prejudice in part defendant's Cross-Motion [12] for Partial Summary Judgment, grant in part, deny in part, and deny without prejudice in part defendant's Motion [29] for Summary Judgment, and grant in part, deny in part, and deny without prejudice in part plaintiff's Cross-Motion [33] for Summary Judgment.  The Court will also order DOE to revise its _Vaughn_ indices, and reluctantly order renewed motions for summary judgment according to the schedule set forth below.

## II.      BACKGROUND

The Energy Policy Act of 2005, 42 U.S.C. §§ 16511–16514, authorizes the Secretary of Energy to make loan guarantees to energy projects that, among other things, reduce air pollutants and employ new or significantly improved technologies.  Def.'s SMF [12] ¶1.  DOE's Loan Programs Office ("LPO") administers the loan guarantee program.  Def.'s SMF [29-2] ¶2.

In July 2008, DOE solicited applications for loan guarantees for nuclear power projects.  Def.'s SMF [12] ¶2.  Georgia Power Company ("GPC"), Oglethorpe Power Company ("OPC"), and Municipal Electric Authority of Georgia ("MEAG") (collectively, "Applicants")—who jointly own two nuclear generating units under construction in Burke County, Georgia (the "Vogtle Project")—each filed a "Part I" application for federal loan guarantees under this program.  *Id.* ¶4.  These Part I applications outlined each Applicant's proposed method for achieving the various requirements of DOE's solicitation.  Def.'s SMF [29-2] ¶10.

After DOE determined that each Applicant satisfied the agency's initial eligibility requirements, it provided guidance regarding their submissions of more comprehensive "Part II" applications.  *Id.* ¶12.  DOE and the Applicants exchanged a lot of information and engaged in extensive negotiations during this period.  *Id.* ¶13.  Following this initial period, in October 2009, DOE sent each Applicant a draft document containing terms and conditions related to the proposed loan guarantees.  Def.'s SMF [12] ¶9.  DOE and the Applicants then engaged in further haggling over those proposed terms, until final term sheets were agreed to and issued by DOE to the Applicants in February 2010.  *Id.* ¶¶10–11, 16.  While many of the terms and conditions in the final term sheets came verbatim from DOE's drafts, Frantz Decl. [12-1] ¶15, some of them changed during negotiations, while others were contributed by the Applicants, such as information about the estimated cost of the Vogtle Project and amortization schedules.  Def.'s SMF [12] ¶13–14.  These "final" term sheets are "conditional"—that is, binding only upon the

2

negotiation and execution of a definitive loan guarantee agreement between DOE and the

Applicants. *Id.* ¶18.

On March 25, 2010, following DOE's issuance of these term sheets, the non-profit

advocacy group Southern Alliance for Clean Energy ("SACE") submitted a group of record

requests to the agency pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Pl.'s SMF [11] ¶2.  SACE requested:

> (1) The Part I and Part II applications received by DOE for the Vogtle Electric
>     Generating Plant ("VEGP") in Burke County, Georgia.
>
> (2) All records concerning the VEGP loan guarantee application including all
>     correspondence between DOE and [the Applicants].
>
> (3) All records related to any environmental critique or evaluation prepared by
>     DOE in regards to the VEGP loan guarantee application . . . .
>
> (4) All records regarding the involvement of the DOE's Credit Review Board
>     with the submitted VEGP loan guarantee application.
>
> (5) All records related to the use of union labor in connection with VEGP
>     application for a loan guarantee . . . .
>
> (6) All records pertaining to the issuance to [the Applicants] of a term sheet, or
>     the drafting of any final or proposed term sheet . . . , that sets forth the general
>     terms and conditions under which DOE may issue a loan guarantee to VEGP.
>
> (7) All records pertaining to the issuance of a loan guarantee to VEGP, including
>     but not limited to
>
>> a. All records related to the process and/or objective criteria used by DOE in
>>    its evaluation;
>>
>> b. All records pertaining to DOE's evaluation of the relative strengths and/or
>>    weaknesses of VEGP applications.

Def.'s Ex. A [29-5] 1–2.  In July 2010, DOE made a partial response to SACE's requests,

providing copies of the final term sheets issued by DOE to OPC, GPC, and MEAG.  Pl.'s SMF

[11] ¶5.  DOE redacted portions of these term sheets, asserting FOIA Exemption 4 as its basis for

doing so.  *Id.*  DOE subsequently produced to SACE other documents—e-mails, letters,

memoranda, and reports—in eleven batches, about once per month until December 2011.  *See*

Supp. Pulliam Decl. [29-5] ¶17.   DOE asserted FOIA Exemptions 4, 5, and 6 in redacting portions of those records.

In August 2010, unsatisfied with DOE's response to its FOIA request, and after efforts to obtain relief at the administrative level, SACE brought suit in this Court,[1] alleging that DOE was in violation of FOIA by failing to produce non-exempt records responsive to its requests.   Am. Compl. [10] ¶¶19, 23.   SACE seeks a declaration that DOE is in violation of FOIA, production of the disputed records, and a grant of attorney's fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).   *Id.* at 6.

In December 2010, Judge Henry H. Kennedy, Jr. entered a scheduling order requiring the parties to initially file summary-judgment briefing only concerning "Item 6 of Plaintiff's FOIA request"—that is, the request relating to the final term sheets issued by DOE to the Applicants. Order [9] 1.   The parties' cross-motions for partial summary judgment on this limited aspect of the case—which only involved the propriety of DOE's invocation of Exemption 4 in redacting various provisions of the Applicants' final term sheets—became ripe for decision in April 2011. The parties later filed motions for summary judgment concerning the balance of the dispute, which are also now before the Court.   While these two rounds of briefing contain overlapping issues, for simplicity's sake the Court will discuss them separately in the analysis that follows.

III.    **LEGAL STANDARD**

Summary judgment should be granted when the materials in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c).   This standard requires more than the mere existence of *some* factual dispute between the parties; "the requirement is that there be no *genuine* issue of *material*

---

[1] This case was reassigned by consent from the Honorable Henry H. Kennedy, Jr. to the Honorable Robert L. Wilkins in January 2011, and again reassigned by consent from Judge Wilkins to this Court in October 2011.

fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  "An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Doe v. IRS*, 706 F. Supp. 2d 1, 5 (D.D.C. 2009) (citing *Anderson*, 477 U.S. at 248).

This Court reviews a motion for summary judgment arising from an agency's decision to withhold or disclose documents under FOIA *de novo*.  5 U.S.C. § 552(a)(4)(B); *see also Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).  In responding to a FOIA request, an agency must conduct a reasonable search for responsive records.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  Furthermore, to be entitled to summary judgment, a defendant must demonstrate that responsive documents that were not produced are exempt from disclosure.  *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, a defendant may rely on relatively detailed and nonconclusory affidavits or declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  Such agency declarations are "accorded a presumption of good faith." *Negley v. FBI*, 169 F. Appx. 591, 594 (D.C. Cir. 2006).  Summary judgment in favor of a defendant is justified if these materials "demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).

## IV.  THE PARTIES' CROSS-MOTIONS [11, 13] FOR PARTIAL SUMMARY JUDGMENT

As stated above, per the order of Judge Kennedy, the parties filed cross-motions for partial summary judgment on the issue of whether DOE had satisfied its statutory obligations

with respect to one of SACE's seven information requests—namely, its request for documents relating to "the issuance to [the Applicants] of a term sheet, or the drafting of any final or proposed term sheet . . . , that sets forth the general terms and conditions under which DOE may issue a loan guarantee . . . ." Def.'s Ex. A [29-5] 2.  As an initial matter, SACE concedes, by failing to argue otherwise, that with respect to this information request, DOE conducted a good faith search for records and used reasonable methods in doing so.  Given this concession, coupled with the substantial evidence in the record showing that DOE's search was in fact adequate, the Court finds in favor of DOE as to this issue.  *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Accordingly, the principal question before the Court regarding the parties' cross-motions for partial summary judgment is whether DOE has demonstrated that the information redacted from the three term sheets disclosed to SACE logically falls within Exemption 4 of FOIA.  *See Amer. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011).  SACE argues that DOE has failed to carry its burden because it has presented only "conclusory and generalized allegations" to justify its redactions.  Pl.'s Mem. [11] 8.  Furthermore, SACE argues, even if those allegations contain the requisite specificity, DOE's redactions do not qualify for protection under Exemption 4.  *Id.* at 11.  In response, DOE argues that its *Vaughn* indices and numerous declarations show conclusively that the information redacted from the term sheets was properly withheld.  Def.'s Mem. [12] 10.

### A.  Exemption 4 and the *Vaughn* Index Requirement

Exemption 4 exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).  There is no dispute in this case that the information redacted from the term sheets is "commercial or financial" in nature.  *See* Pl.'s Response [14] 5.  However, the parties dispute whether the

information was "obtained from a person" and is "confidential." *Id.* Information is *not* "obtained from a person" if it was "generated within the Government." *Bd. of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 405 (D.C. Cir. 1980). However, portions of agency-created records may be exempt if they contain information that was either supplied by a person outside the government or that could permit others to "extrapolate" such information. *Gulf & W. Indus. v. U.S.*, 615 F.2d 527, 529–30 (D.C. Cir. 1979); *see also Soucie v. David*, 448 F.2d 1067, 1078–79 (D.C. Cir. 1971). Regarding Exemption 4's confidentiality prong, information is "confidential" if its disclosure would be likely to either "impair the Government's ability to obtain necessary information in the future" or "cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974); *see also United Techs. Corp. v. U.S. Dep't of Justice*, 601 F.3d 557, 563 (D.C. Cir. 2010).

To facilitate the conduct of FOIA litigation generally and to assist the Court and the plaintiff in reviewing an agency's application of FOIA exemptions to responsive material, defending agencies are generally required to produce *Vaughn* indices that provide enough information about redacted material and the agency's justification for those redactions to facilitate judicial review without resort to *in camera* inspection. *See generally Vaughn v. Rosen*, 484 F.2d 820, 826–828 (D.C. Cir. 1973). *Vaughn* indices "permit adequate adversary testing of the agency's claimed right to an exemption," enable district courts to rationally decide whether information should be disclosed, and create "a record that will render the District Court's decision capable of meaningful review on appeal." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218–219 (D.C. Cir. 1987) (citations and internal quotation marks omitted). "Specificity is the defining requirement of the *Vaughn* index." *Id.* at 219. Vague, sweeping, or conclusory materials are inadequate to support summary judgment in favor of an agency and the acceptance

of such inadequate support "would constitute an abandonment of the trial court's obligation under FOIA to conduct *de novo* review." *Id.*

Function rules over form in this area, and so regardless of how a defending agency decides to justify its withholdings in *Vaughn* indices and supporting declarations, the agency must supply "a relatively detailed justification" that specifically identifies "the reasons why a particular exemption is relevant and [that] correlat[es] those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

**A. Analysis**

    **1. "*Obtained* from a person"**

The Court agrees with SACE that, at least as to the vast majority of the disputed term-sheet redactions, DOE's proof fails to show that the redacted information was "obtained from" the Applicants, as Exemption 4 requires. Before turning to that proof, the Court will briefly summarize those relatively few instances in which courts in this Circuit have interpreted and applied Exemption 4's "obtained from a person" prong.

While there are numerous cases discussing whether it was a "person" from whom information was obtained, there are few discussing whether the information was "obtained" from outside the government agency, rather than generated by the agency itself. On the one hand, the D.C. Circuit has found that information in an agency-generated report is still "obtained from a person" if such information was supplied to the agency by a person or could allow others to "extrapolate" such information. *Gulf*, 615 F.2d at 529–30; *see also Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000). On the other hand, when the redacted information—despite relying upon other information obtained from outside the agency—constitutes that agency's own analysis, such information is the agency's information,

and not "obtained from a person" under Exemption 4.  *See Philadelphia Newspapers, Inc. v. Dep't of Health & Human Servs.*, 69 F. Supp. 2d, 63, 66–67 (D.D.C. 1999); *Fisher v. Renegotiation Bd.*, 355 F. Supp. 1171, 1173–74 (D.D.C. 1973).  Finally, the mere fact that information was the product of negotiations between a "person" and the agency does not make that information "obtained from a person" under Exemption 4.  *See In Defense of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 102–03 (D.D.C. 2008).  Nor does the fact that information was negotiated preclude the proper application of Exemption 4, at least in circumstances where the information was initially obtained from outside the agency and was then modified through negotiations.  *Pub. Citizen Health Research Group v. Nat'l Insts. of Health*, 209 F. Supp. 2d 37, 45 (D.D.C. 2002).  As these cases show, the key distinction—which will obviously be blurry in many instances—is between information that is either repeated verbatim or slightly modified by the agency, and information that is substantially reformulated by the agency, such that it is no longer a "person's" information but the agency's information. The latter type is not shielded by Exemption 4.

Sadly we don't arrive at an application of these principles for most of the redactions in the term sheets because DOE hasn't adequately supported its contention that the redacted information was "obtained from" the Applicants.  Turning to that support, DOE presents the following with its Motion: (1) a declaration from the Director of the Origination Division of the LPO, David G. Frantz, Frantz Decl. [12-1]; (2) a declaration from Wendy Pulliam, who is the Project Manager of the FOIA Team of the LPO at DOE, to which are attached *Vaughn* indices for the three term sheets in dispute, Pulliam Decl. [12-2]; (3) a declaration from Earl C. Long, Assistant Treasurer of GPC, Long Decl. [12-3]; (4) a declaration from Elizabeth B. Higgins, Executive Vice President and Chief Financial Officer of OPC, Higgins Decl. [12-4]; and a declaration from James E. Fuller, Senior Vice President and Chief Financial Officer of MEAG.

Fuller Decl. [12-5].   While in all other respects rather detailed and comprehensive, these materials generally are short on facts concerning *where* the redacted information came from.  For example, the Frantz Declaration (which DOE principally relies upon for proof that the redacted information was "obtained from a person" under Exemption 4, *see* Def.'s Reply [19] 3–5) attempts to prove that the Applicants were the source of the redacted information by specifying those term sheet provisions that did *not* come from the Applicants and so were disclosed to SACE.  Frantz Decl. [12-1] 7.  However, this does not suggest, let alone prove, that the disputed information was obtained from the Applicants, since it is illogical to generalize about some of the information in the term sheets based solely upon the characteristics of other information in the term sheets.

Mr. Frantz does get more specific when he says that certain types of information were developed by the Applicants and incorporated into the final term sheets.  *Id.* at 6.  This includes "estimates of [each Applicant's] cost to construct, finance, own and operate its interest" in the project; "projections related to nuclear fuel, training costs, and applicable capitalized interest during construction"; "historical and projected financial statements, financial models, resource plans and financing plans"; "loan draw schedules"; and "amortization schedules." *Id.*  These general statements are repeated elsewhere, in similar form, in the *Vaughn* indices and other supporting declarations.  *See, e.g.*, Pulliam Decl. [12-2] Ex. F at 4; Long Decl. [12-3] 12; Higgins Decl. [12-4] 4, 6, 9.  With limited exceptions, DOE fails to identify specific redactions in the term sheets that contain these types of information.

Turning to the entries in DOE's *Vaughn* indices offered in support of its Cross-Motion [12] for Partial Summary Judgment, these entries are mostly silent on the question of whether the redacted information was "obtained from" an Applicant, focusing almost exclusively on the issue of competitive harm.  For example, the first entry in the *Vaughn* index for GPC's term sheet

shows that a particular *date* was redacted, says that this date would be valuable to GPC's competitors, and refers the reader to a general statement preceding the index that constitutes DOE's "[r]eason for [w]ithholding" the redacting information.  Pulliam Decl. [12-2] Ex. F at 4. But this general statement never indicates that the redacted date was "obtained from" the Applicants or provides any facts that would suggest this to be the case.  *See id.* at 1–4.  The same is true about virtually every other entry.   DOE redacted provisions related to funding commitments, how interest would accrue after certain triggering events, a maintenance fee payable by the Applicants to DOE, certain representations and warranties agreed to, and so forth. Yet nowhere does DOE adequately explain how these specific redactions concern information that DOE "obtained from" the Applicants.  Without further information, these appear to be simply commercial terms constituting parts of the deal arrived at by DOE and the Applicants, not commercial or financial information *of* the Applicants that ended up in the final term sheets and that might qualify for protection from disclosure under Exemption 4.

What DOE does say about most of the redactions to the term sheets actually undercuts its claim that the Applicants were the source of the information.  DOE repeatedly states that certain redacted terms and conditions agreed to by the Applicants are "different" or "more burdensome" from those they ordinarily agree to, and that the Applicants do not want future lenders to insist on similar restrictions.  *See, e.g.*, Pulliam Decl. [12-2] Ex. H at 3.  It seems unlikely, without further information or explanation from DOE, that the Applicants would have been the source of terms and conditions that they find burdensome and ordinarily avoid.

However, as to a small number of redacted provisions, DOE's supporting evidence is sufficient to show that these provisions were "obtained from" the Applicants.  For example, the *Vaughn* index for the GPC term sheet notes that Schedules 1 and 2 of that term sheet reflect information "developed by GPC,"  Pulliam Decl. [12-2] Ex. F at 10–11, which corroborates

statements elsewhere in DOE's submissions.  The Court will only list below those eleven redactions that DOE has adequately demonstrated were "obtained" from the Applicants:

*GPC Term Sheet Redactions*

1. "Schedule I - GPC Base Project Costs."  Pulliam Decl. [12-2] Ex. D at 100.[2]

2. "Schedule II - Eligible Base Project Costs."  *Id.* at 101.

3. "Schedule III - Repayment Schedule."  *Id.* at 102–03.

*OPC Term Sheet Redactions*

1. "OPC Base Project Costs" estimate.  Pulliam Decl. [12-2] Ex. E at 112.

2. "Schedule I - OPC Base Project Costs."  *Id.* at 141.

3. "Schedule II - OPC Eligible Base Project Costs."  *Id.* at 141.

4. "Schedule III - Repayment Schedule."  *Id.* at 142–43.

*MEAG Term Sheet Redactions*

1. "MEAG Base Project Costs" allocations for special-purpose vehicles.  Pulliam Decl. [12-2] Ex. C at 25.

2. "Schedule 1 - MEAG Base Project Costs."  *Id.* at 60.

3. "Schedule 2 - Eligible Project Costs."  *Id.* at 61.

4. "Application of Proceeds of Guarantee Loans."  *Id.* at 63.

DOE's supporting materials provide sufficient detail for the Court to conclude that this information was developed by the Applicants, and either incorporated without change into the final term sheets or slightly modified through negotiation.  *See, e.g.*, Higgins Decl. [12-4] 6; Frantz Decl. [12-1] 6; Long Decl. [12-3] 12–13; Fuller Decl. [12-5] 4, 6–7; Pulliam Decl. [12-2] Ex. F at 10–11; Pulliam Decl. [12-2] Ex. H at 2, 8–10.  As such, this information was "obtained from a person" under Exemption 4.

---

[2] Since this schedule doesn't have a page number, the page number indicated here (and for the other ten items listed beneath it) is the page number of the entire document filed on ECF, docket number 12-2.

Accordingly, the Court finds that, with the exception of the eleven items listed above, DOE's *Vaughn* indices provide the Court with an insufficient factual basis to determine whether the redactions logically fall within Exemption 4.  Specifically, DOE's evidence fails to show with requisite detail and specificity that DOE obtained the redacted information from the Applicants.  The Court will therefore order DOE to revise its *Vaughn* indices to include (if it can) facts supporting its contention that the specific information redacted from the term sheets was "obtained from" the Applicants, as is required by Exemption 4.  The Court further advises DOE that the mere fact that a term or provision in these documents was "negotiated" will be insufficient for it to carry its burden; DOE must also provide specific information upon which the Court could conclude that the Applicants either provided the very information that was redacted or that the redacted information is only a minimally modified version of information that originally came from the Applicants.

Regarding these *Vaughn* index revisions generally, the Court is indifferent regarding how DOE fills the gap in its evidence—for example, DOE can choose to add to each entry in its *Vaughn* indices additional details concerning the origin and character of that specific redacted information, or DOE can group the various redactions into categories with common attributes, label each specific redaction in the index as belonging to a category, and explain (in sufficient detail) how those categories of information were "obtained from" the Applicants.  However, to repeat, these revised materials must be more detailed, and must specifically identify how the particular part of the withheld document meets all of the requirements of Exemption 4 that are in dispute in this case.  *See Morley v. C.I.A.*, 508 F.3d 1108, 1122 (D.C. Cir. 2007).

### 2.  Competitive Harm

The Court also finds that, as to the eleven redactions listed above, DOE has met its burden as to the remaining disputed requirement of Exemption 4—namely, that this information

is "confidential."   *See* 5 U.S.C. § 552(b)(4).   As stated above, information is "confidential" under Exemption 4 if its disclosure would be likely to either "impair the Government's ability to obtain necessary information in the future" or "cause substantial harm to the competitive position of the person from whom the information was obtained."   *Nat'l Parks*, 498 F.2d at 770.   In determining whether the Applicants would likely suffer competitive harm, the Court "need not engage in a sophisticated economic analysis of the likely effects of disclosure."   *Pub. Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280, 1291 (D.C. Cir. 1983).   Courts generally defer to an agency's predictions concerning the repercussions of disclosure, acknowledging that predictions about competitive harm are not capable of exact proof.   *United Technologies*, 601 F.3d at 563.   Furthermore, a party opposing disclosure doesn't have to show "actual competitive harm"; evidence that shows "[a]ctual competition and the likelihood of substantial competitive injury" is sufficient.   *Public Citizen*, 704 F.2d at 1291 (citations and quotations omitted).

Here, regarding these eleven items, DOE has presented evidence of sufficient detail to meet its burden of proof on the issue of confidentiality.   First, SACE does not appear to challenge DOE's contention that the Applicants face actual competition in the relevant markets, and DOE has (in any case) presented sufficient evidence on that issue.   *See, e.g.*, Long Decl. [12-3] 3–4; Higgins Decl. [12-4] 3–4; Fuller Decl. [12-5] 2.   Second, DOE's evidence is also sufficient to show a likelihood that disclosure would cause the Applicants substantial competitive harm.   While SACE argues, correctly, that the harm envisioned by Exemption 4 is the "harm flowing from the affirmative use of proprietary information *by competitors*," Pl.'s Response [14] 13 (citing *Public Citizen*, 704 F.2d at 1291 n.30), SACE is incorrect in arguing that DOE has failed to present evidence showing such harm.   For example, in the *Vaughn* index for the GPC term sheet, DOE notes that Schedules 1 and 2 contain detailed project cost estimates, developed

at significant expense to GPC, whose disclosure would provide a free lunch to competitors seeking to construct their own nuclear power generating units in the future. Pulliam Decl. [12-2] Ex. F at 10, 11. The *Vaughn* index for MEAG's term sheet similarly supports DOE's redaction of Schedules 1 and 2 of that term sheet. *See* Pulliam Decl. [12-2] Ex. H at 8–10. As to DOE's redactions of Schedule 3 of GPC's and OPC's term sheets, which contain a "repayment" or "loan draw" schedule, DOE has presented evidence indicating that this information would permit the Applicants' competitors to estimate the timing of certain expenditures within the construction project, allowing them to benefit from the Applicants' work at no cost. *See, e.g.*, Long Decl. [12-3] 12–13; Higgins Decl. [12-4] 9; Fuller Decl. [12-5] 6–7. Regarding the redaction in the MEAG term sheet of the company's allocations of project costs among certain "special purpose vehicles," the evidence demonstrates a likelihood that competitors would use this information to estimate MEAG's costs of supplying power, thereby allowing such competitors to alter their own prices and shave business away from MEAG. Fuller Decl. [12-5] 4. Finally, as to the portion of Schedule 3 redacted in MEAG's term sheet, the evidence shows that disclosure of the redacted terms would likely provide competitors (at no cost) with insight into the company's financing plan for the project and permit them to estimate its costs of producing power. *Id.* at 6–7. These are not, as SACE argues, simply bare speculations on the part of DOE and the Applicants, but reasonable predictions of how competitors in the power generation market could (and likely would) exploit detailed and valuable business information not ordinarily available to them. In sum, as to the eleven redactions listed above, DOE has established that the associated information, if disclosed, would likely result in substantial competitive injuries to the Applicants.

The Court further finds that DOE has demonstrated that disclosure of the redacted information listed above would likely interfere with DOE's ability to fulfill its statutory mandate to promote and finance financially-risky clean energy projects. *See Pub. Citizen*, 209 F. Supp.

2d at 51–52.   Among the many hurdles to obtaining loan guarantees from the government, applicants must submit a wealth of sensitive business information to DOE.  *See* Frantz Decl. [12-1] 3, 8.   Permitting the disclosure, through FOIA, of valuable and confidential business information would necessarily serve as a disincentive for companies to pursue such loan guarantees.  *Id.* at 9.   Such companies, viewing the enormous costs and risks associated with a high technology energy project, and adding to those costs and risks the prospect that FOIA disclosures of sensitive commercial information could provide competitors with a windfall, would likely think twice about taking the risk and might pursue less risky and more environmentally damaging projects instead.   As a result, the statutory goal of promoting projects that are cleaner and more advanced than those currently in service would be frustrated.  *See* 42 U.S.C. § 16513(a).

In sum, DOE has met its burden under Exemption 4 as to the eleven redactions listed above.   DOE has likewise presented sufficient evidence that concerning these redactions non-exempt portions of these records were properly segregated and released.  *See* Pulliam Decl. [12-2] ¶14.   However, in all other respects, DOE's supporting affidavits and *Vaughn* indices are inadequate and must be revised in order for the Court to undertake a responsible *de novo* review of the agency's remaining withholdings under Exemption 4.

## V.      THE PARTIES' CROSS-MOTIONS [29, 33] FOR SUMMARY JUDGMENT

As stated above, the parties have also filed cross-motions for summary judgment, which generally concern the propriety of DOE's application of FOIA Exemptions 4, 5, and 6 to portions of e-mails, reports, meeting agendas, letters, and other documents dated from about October 2008 to July 2010.   DOE redacted from these records information pertaining to "the rights, obligations, contractual agreements with DOE and other third parties, estimated project costs, credit analyses and rating, equity commitment, and reporting and other requirements

related to the loan guarantee for the Vogtle Project."  Def.'s Mem. [29-1] 16; *see also Vaughn* Index [29-5] Appx. A at 1.  DOE also redacted the e-mail addresses and phone numbers of DOE personnel and contractors.  Def.'s Mem. [29-1] 30.  In support of these redactions, DOE has attached to its Motion supplementary declarations as well as a 50-page *Vaughn* index with about 133 entries.

As an initial matter, SACE does not contest DOE's withholdings, under Exemption 6, of various e-mail addresses and phone numbers of DOE personnel and consultants.  Pl.'s Mem. [33-1] 1 n.1.  Nor does SACE challenge DOE's contention that, regarding the requests at issue in these motions, it conducted in good faith a reasonable search for records responsive to SACE's March 25, 2010 FOIA request.  *See Oglesby*, 920 F.2d at 68.  Accordingly, the Court finds in favor of DOE as to these two issues.  Specifically, regarding DOE's Exemption 6 withholdings, the Court finds that the e-mail addresses and phone numbers were properly redacted from the following records:  CR103–104, NW124–127, NW308–310, NW707–708, NW784–785, NW802–804, KC240–243, DF40–41, SR137, SR165–67, SR189–191, KC88, NW17, NW41, NW50–56, NW176, NW356–358, NW412–413, NW523, NW568–571, NW605, NW650–651, NW723–726, NW725, KC153–154, JS1 5–8, JS1 7, KyC96–99, KyC204, TH18, TH39, MP14–15, MP30, SR256, KS10, KS25, KS27, VT75, VT111, VT118, VT124, Consultation Package 104–107, Consultation Package 108, and SR67.

However, SACE challenges the propriety of DOE's redactions under Exemptions 4 and 5.  Pl.'s Mem. [33-1] 1.  SACE raises in its Cross-Motion essentially the same challenge to DOE's withholdings as it raised in the context of its Motion for Partial Summary Judgment— namely, that DOE's *Vaughn* index and supporting affidavits lack sufficient detail to justify the agency's withholdings pursuant to Exemptions 4 and 5, and that, in any case, those redactions do not qualify for the protection of either exemption.  *Id.*  SACE asks the Court to order the release

17

of the withheld information, *id.*, or, alternatively, to order DOE to file the disputed records under seal for *in camera* review.  Pl.'s Reply Mem. [41] 2.

### A.  Exemptions 4 and 5

As is explained in the context of the Court's consideration of the parties' cross-motions for partial summary judgment, Exemption 4 of FOIA exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).

Exemption 5 exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *Id.* § 552(b)(5).  This exemption covers evidentiary privileges such as the work-product privilege and the deliberative process privilege, the latter of which DOE claims applies in this case.  *See Williams & Connolly v. S.E.C.*, 662 F.3d 1240, 1243 (D.C. Cir. 2011).  To qualify for Exemption 5 protection under the deliberative process privilege, an agency's materials must be both "predecisional" and part of the "deliberative process."  *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011).  The purpose of this privilege is to protect the deliberative process of the government, and thereby the quality of its decisions, by fostering the free expression of advice, opinions, and recommendations among governmental decision-makers, including consultants.  *Id.* (citing *Ryan v. Dep't of Justice*, 617 F.2d 781, 789–90 (D.C. Cir. 1980)).

### B.  Analysis

#### 1.  Exemption 4

The Court finds that, with one limited exception, DOE's *Vaughn* index and supporting declarations fail to provide a sufficient factual basis upon which the Court could evaluate the propriety of its application of Exemption 4 to the information redacted from the records listed on

the index.  As was the case regarding DOE's support of the redactions it made to information in the Applicants' term sheets, DOE's supporting materials generally fail to tie the specific characteristics of redacted information to all of the legal requirements of this exemption. Consequently, the Court is unable to perform a responsible *de novo* review of the agency's actions, as required by FOIA.  *See* 5 U.S.C. § 552(a)(4)(B).

Before turning to the defects in DOE's approach to justifying its Exemption 4 withholdings, the Court will briefly summarize that approach.  DOE has attached to its Motion [29] for Summary Judgment the following items: a supplementary declaration from David Frantz, the Acting Director of DOE's LPO, Supp. Frantz Decl. [29-3] 1; another declaration from that same individual providing the names of contractors and subcontractors involved in the agency's consideration of the Vogtle Project, Frantz Decl. [29-4] 1; a supplemental declaration from DOE's FOIA Project Manager of the LPO, Wendy Pulliam, Supp. Pulliam Decl. [29-5] 1; and, attached to the Pulliam Declaration, a *Vaughn* index of about 50 pages.  *Vaughn* Index [29-5].

DOE relies almost exclusively on its *Vaughn* index to demonstrate the propriety of particular redactions.  *See* Supp. Pulliam Decl. [29-5] ¶21.  That index contains the following categories of information: a Bates number, a description of the record (*e.g.*, date, sender and recipient, and the subject line (if an e-mail) or the title of the record), and the claimed "Exemption/Justification."  *See Vaughn* Index [29-5] 1.  When DOE redacted information in a record, an entry was made in the index indicating which exemption was used to justify the redaction—*e.g.*, "b4 Commercial and Financial Information."  The "Exemption/Justification" entry does not usually itself contain facts justifying the application of the exemption, but instead refers the reader to a general justification statement elsewhere.  A typical redaction of

information pursuant to Exemption 4 refers the reader to "Appendix A which provides the justification for and identifies the information subject to Exemption 4." *See id.*

When the entries in the *Vaughn* index are read in tandem with "Appendix A," it quickly becomes clear that these materials fail to provide information specific to each redaction that would permit the Court to rule on the applicability of Exemption 4. Appendix A generally describes the information DOE withheld under Exemption 4. *Vaughn* Index [29-5] Appx. A at 1–7. This information, DOE says, "concerns details of the financing arrangements between DOE and [GPC, OPC, and MEAG] . . . ." *Id.* at 1. It includes "terms and conditions that were negotiated" by DOE and the Applicants. *Id.* The document is nearly silent, however, on the question of whether the redacted information was "obtained from" the Applicants. Instead, it focuses on the issue of competitive harm, describing the three power companies as engaged in a competitive marketplace. *Id.* at 1, 4. Disclosure of financing information related to the Vogtle Project would, DOE says, harm the companies' competitive positions. *Id.* at 2–7. And so forth. Appendix A also provides a brief list of examples of the types of information DOE withheld, without explaining why those types of information meet Exemption 4's requirements. *Id.* at 3, 6, 7. In sum, while Appendix A says a good deal about competitive harm, it fails to provide any information concerning the origins of most of this redacted information.

Only as to a single type of information does DOE present facts that shed sufficient light on the information's origin. Appendix A states that "information related to credit fee subsidy cost estimates" was withheld under Exemption 4. *Id.* at 3, 5, 7. These estimates, DOE reports, represent the long-term cost to the government of the loan guarantees. 2d Supp. Frantz Decl. [40-1] ¶3. DOE says that, at least as to GPC, this estimate was "provided to GPC" and "was developed from the detailed due diligence information prepared by GPC and submitted to DOE." *Vaughn* Index [29-5] Appx. A at 3. DOE also says that the cost estimates represent "*DOE's*

*analysis* of the risk associated with the Vogtle Project . . . ."  2d Supp. Frantz Decl. [40-1] ¶7 (emphasis added).

However, the Court finds that these facts demonstrate that this type of information is *not* protected by Exemption 4 and must be disclosed to SACE.  These estimates were clearly generated within DOE, and are therefore presumptively outside the scope of Exemption 4.  *See Board of Trade*, 627 F.2d at 405.  While Appendix A to DOE's *Vaughn* index states that this estimate was "developed from the detailed due diligence information" prepared by the Applicants and submitted to DOE, *Vaughn* Index [29-5] Appx. A at 3, information generated by the government is not exempt from disclosure under Exemption 4 simply because it is based upon information supplied by persons outside the agency.  *See Philadelphia Newspapers*, 69 F. Supp. 2d at 66–67; *Fisher*, 355 F. Supp. at 1173–74.  SACE is requesting the estimates themselves, not the Applicants' "due diligence information" upon which DOE based its estimates.  DOE's reliance on *Public Citizen*, Def.'s Mem. [29-1] 18, is misplaced, as that court found that a final royalty rate was "obtained from a person" for purposes of Exemption 4 after a licensee provided a proposed rate to the agency "in the first instance."  *Public* Citzen, 209 F. Supp. 2d at 44–45.  By contrast, these cost estimates are not mere modifications through negotiation of Applicant information, but—as DOE admits—the agency's own "analysis," and therefore no protected from disclosure by Exemption 4.  *See Philadelphia Newspapers*, 69 F. Supp. 2d at 67.  Absent a showing by DOE that these estimates are such that the underlying due diligence information could be "extrapolated" by others, *Gulf*, 615 F.2d at 529–30—and DOE has made no effort to demonstrate this—these estimates are not "obtained from a person" for purposes of Exemption 4 and must be disclosed.

Accordingly, the Court finds that DOE has failed to adequately support, in its *Vaughn* index, nearly every redaction made under Exemption 4, and will order the agency to revise the

index to provide further detail concerning how the specific information redacted was "obtained from" the Applicants.  The Court further finds that as to the items designated Attachments to SR2 and CR7–8, which contain information related to the costs estimates referred to above, Exemption 4 does not exempt that information from disclosure and it must be produced to SACE.

### 2.  Exemption 5

DOE also redacted numerous items based upon the deliberative process privilege of Exemption 5.  As to these redactions, DOE's *Vaughn* index is more complete and provides a sufficient factual basis for the Court to make a *de novo* evaluation of the propriety of the agency's application of Exemption 5 to many of the disputed records.  However, many other entries in the *Vaughn* index provide insufficient information, and therefore the Court will order revisions to those entries to permit meaningful judicial review of the agency's withholdings.

Review of DOE's *Vaughn* index reveals that the agency redacted a few general categories of information.  One general type of information that DOE redacted is discussions among DOE personnel and contractors about various provisions of the Applicants' proposed term sheets and other agreements prior to the issuance of final term sheets on February 13, 2010.  An example of this type of information is identified in NW124–127, which is an e-mail string, dated December 22, 2009, containing discussions among DOE personnel and consultants about provisions of the yet-to-be-finalized term sheets as well as another contract under negotiation.  *Vaughn* Index [29-5] 2.  These internal agency discussions about specific provisions in draft agreements subject to ongoing negotiation with the Applicants are clearly predecisional in character as well as deliberative, forming part of DOE's process of finalizing the draft term sheets that had been provided to the Applicants earlier that year.  Disclosure of these materials would likely stifle the necessary candor in the agency's decisional process.

However, SACE disputes the predecisional character of DOE's Exemption 5 withholdings generally, without pointing to any specific items, arguing that information redacted from inter-agency communications prior to the issuance of the final term sheets may have lost its predecisional status if it was later "adopted, formally or informally, as the agency position . . . ." Pl.'s Mem. [33-1] 24 (quoting *Horowitz v. Peace Corps*, 428 F.3d 271, 276 (D.C. Cir. 2005)). However, "there must be evidence that an agency has *actually* adopted or incorporated by reference the document at issue; mere speculation will not suffice." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 359 (2d Cir. 2005); *see also Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 78 (D.D.C. 2008).   Since there is no evidence that the DOE later expressly adopted any of the information within this category of redacted information on the agency's *Vaughn* index, the Court finds that, as to the following documents, DOE properly withheld information pursuant to Exemption 5: NW124–127, NW277–279, NW302–303, NW562–564, NW606–609, NW709, NW784–785, NW922–923, SR134, NW605, SR7–8, KyC4–9, KyC15–18, KyC20–24, KyC26–31, KyC33–46, KyC116–144, and KyC171–180. However, to the extent that any redactions in these documents were made solely on the basis of Exemption 4, the propriety of those redaction remains in dispute pending DOE's revision of its *Vaughn* index.

A second type of information redacted by DOE can be described generally as drafts of documents and discussions among DOE personnel and consultants concerning draft documents and proposed courses of action.  An example of this type is document SR228, which is an e-mail dated November 19, 2009 in which agency personnel discuss a "proposed statement from the Credit Committee." *Vaughn* Index [29-5] 11–12.  Another record falling into this category is KC394, which is an e-mail from December 2009 in which DOE personnel discuss drafts of executive summaries concerning the Applicants. *Id.* at 26.  The Court finds that as to redactions

in this category, DOE has met its burden to show that the information redacted is both predecisional and deliberative, and was properly withheld pursuant to Exemption 5.  *See Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve*, 762 F. Supp. 2d 123, 137 (D.D.C. 2011) (finding that the withholding of a memorandum containing discussion of a proposed transaction was proper under Exemption 5); *FPL Group, Inc. v. I.R.S.*, 698 F. Supp. 2d 66, 87 (D.D.C. 2010) (finding the agency's invocation of Exemption 5 proper as to discussions about proposed regulations and draft revenue rulings).   Accordingly, DOE properly redacted the following items pursuant to Exemption 5: NW288–291, NW750, DF7–9, SR228, KC394, KyC96–99, MP30, SR41, KC416, KyC53–54, KyC100–115, SR200, Attachments to NW732–737, and Attachments to NW693.   However, once again, any redactions in these documents solely grounded upon Exemption 4 remain in dispute.

A third category of information withheld by DOE can be roughly described as constituting status reports, internal discussions about meetings during the process of arriving at final term sheets, and internal discussions about the timing of various DOE actions on the Vogtle Project.  DOE has met its burden to show that these are predecisional and deliberative materials related to DOE's formulation of policy decisions surrounding the issuance of final term sheets to the Applicants as well as ongoing deliberations concerning the Vogtle Project, and their disclosure would likely stifle the necessary candor in the agency's policy making process.  *See Hornbostel v. U.S. Dep't of Interior*, 305 F. Supp. 2d 21, 31 (D.D.C. 2003).  As such, the following items were properly redacted pursuant to the deliberative process privilege of Exemption 5: Attachments to JS18, Attachments to NW592, Attachments to SR295, Attachments to KyC100, NW17, NW50–56, NW78, NW412–413, KyC204, VT72, VT124, Consultation Package 104–107, Attachments to NW17, and Attachments to NW19.  However, to the extent that any redactions in these documents were made solely on the basis on Exemption 4,

the propriety of those redactions remains in dispute pending DOE's revision of its *Vaughn* index. Also, as to each of the three categories of information listed above that the Court has determined were properly withheld under Exemption 5, the Court finds that DOE has met its burden to show that all non-exempt portions of these records were segregated and released. *See* Supp. Pulliam Decl. [29-5] ¶19.

However, as to a relatively large number of items, DOE's *Vaughn* index and supporting materials fail to provide the Court with sufficient information about the withheld material and the role it played in the decisional process for the Court to determine whether it is covered by the deliberative process privilege. *See Elec. Frontier Found. v. U.S. Dep't of Justice*, No. 10-641, 2011 WL 5966379, at *6 (D.D.C. Nov. 30, 2011). For example, in one e-mail string (KC160–161) dated June 22, 2010—a few months following the issuance of the final term sheets to the Applicants—DOE personnel apparently discussed "the Vogtle Project," *Vaughn* Index [29-5] 9, but this clearly fails to provide the Court with anything to go on when it comes to evaluating the agency's actions in redacting information within that record. Likewise DOE redacted e-mails containing discussions of "Davis–Bacon Act issues," without explaining what sort of decisional process these employees were involved in during these discussions, such that Exemption 5 would protect these discussions from public disclosure. *See id.* at 5, 9, 11. Another murky entry in DOE's *Vaughn* index involves an e-mail discussion *about* a discussion with "Ms. Leppink," but nothing else is said in the entry, and even the e-mail's subject line is redacted. *Id.* at 19. The Court neither knows who "Ms. Leppink" is or what these discussions were even generally about, but it does know that this description is inadequate to justify the withholding under Exemption 5. DOE must provide the Court will more detailed information, specific to each redaction, showing that the withholding meets the requirements of Exemption 5. Furthermore, to the extent that DOE has redacted clearly factual information—as may be found in the charts, "models," and

other reports on the *Vaughn* index—rather than recommendations, opinions, and proposals, DOE must identify and describe that information specifically and provide a tailored justification for the withholding.

Accordingly, the Court finds that DOE's *Vaughn* index is inadequate as to the following items redacted on the basis of Exemption 5, and will order DOE to revise the index in light of the deficiencies identified above: NW308–310, KC160–161, KC240–243, SR137, SR165–167, SR205–206, KyC205, Attachment to KyC20, Attachments to KyC23, Attachments to KyC59, Attachments to KyC86, Attachments to KyC113, Attachments to KyC129, Attachments to KyC144, Attachments to KyC157, Attachments to KyC174, Attachments to KyC176, Attachments to KyC205, KC88, Attachments to JS120, NW41, NW57, NW356–358, NW523, NW568–571, NW650–651, NW723–726, NW725, KC65–72, KC153–154, JS1 5–8, JS1 7, JA1 10–11, TH18, TH39, MP14–15, SR170–171, SR256, KS10, KS25, VT106–107, VT111, VT118, Consultation Package 108, Attachments to NW567–568, Attachments (4) and (5) to NW701, Attachments to NW888, DF44–47, MM53, JS1 49–52, TO1, KyC160–161, SR43–44, and SR67.

## VI.   CONCLUSION

For the reasons stated above, the Court will deny in part and deny without prejudice in part plaintiff's Motion [11] for Partial Summary Judgment, grant in part and deny without prejudice in part defendant's Cross-Motion [12] for Partial Summary Judgment, grant in part, deny in part, and deny without prejudice in part defendant's Motion [29] for Summary Judgment, and grant in part, deny in part, and deny without prejudice in part plaintiff's Cross-Motion [33] for Summary Judgment.  In addition to producing to SACE the items, identified above, related to credit subsidy cost estimates, DOE will be ordered to submit, alongside a renewed motion for summary judgment that addresses all of the outstanding issues in one motion, revised *Vaughn* indices that correct the problems identified by the Court above within sixty (60) days of

this date.  SACE shall file its own renewed motion for summary judgment thirty (30) days after

DOE files its motion.  The Court also will deny without prejudice SACE's request for *in camera*

review, on the hope that DOE's revisions will render that review unnecessary, and in light of the

fact that certain facts material to the Court's inquiry—such as the origins of redacted information

and the role played by documents in the agency's decisional process—may not be readily

discoverable by the Court during its own review of the documents.

A final word about the agency's submissions in this phase of the litigation.  Particularly

regarding the *Vaughn* indices and materials supporting DOE's Cross-Motion [12] for Partial

Summary Judgment, the Court finds it peculiar that DOE apparently believes those items to be

adequate support for its redactions, under Exemption 4, to the Applicants' term sheets.  But the

unfortunate effect of these evidentiary inadequacies is to drag out this litigation and needlessly

tax the Court's—and everyone else's—resources in a type of litigation that is already notoriously

time-consuming.  In the context of FOIA litigation, information has a short shelf-life within

which it can be useful to the requesting party, and accordingly there may be numerous (and

illegitimate) reasons why a defending agency might want to run out the clock.  Governmental

information doesn't have to be secret forever—just as long as necessary—to do harm.  Courts, in

routinely giving agencies a "second chance" in FOIA cases following the submission of patently

inadequate supporting materials, may be unwittingly complicit in this subversion of FOIA's

fundamental purpose: public access, not secrecy.  *See Ctr. for Auto Safety v. Nat'l Highway

Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001).  Consequently, there may be a very

legitimate reason for courts to revisit this routine, and to consider the strong medicine of

immediate disclosure instead of ordering second chances for sophisticated repeat-players in

FOIA litigation.  *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir.

1980).  However, in this case, where SACE has not questioned DOE's motives and where the

matter is not particularly old or otherwise marked with the signs of dilatory behavior, the Court is reluctant—as of yet—to order the strong medicine.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 28, 2012.